FILED
02/14/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 4, 2018

### IN RE PAETYN M. ET AL.

**Appeal from the Juvenile Court for McNairy County**
**No. 2014-JV-49     Van McMahan, Judge**

_____

### No. W2017-02444-COA-R3-PT

_____

Father petitioned to terminate the parental rights of the mother of his child. Father later married and, along with his spouse, joined in an amended petition for termination of parental rights and for adoption. The amended petition alleged mother abandoned the child by failure to visit and failure to support. On the date scheduled for trial, Mother failed to appear, and her attorney was denied a continuance. Following the trial, the juvenile court found by clear and convincing evidence that mother had abandoned her child by willful failure to visit and willful failure to support and a third statutory ground not asserted in the amended petition. The court also found by clear and convincing evidence that termination of mother's parental rights was in the child's best interest. On appeal, mother challenges the court's subject matter jurisdiction. Mother also asserts that the court erred in denying her request for a continuance and that the proof was less than clear and convincing as to the grounds for termination and the child's best interest. We conclude that the record only supports one statutory ground for termination of parental rights, abandonment by willful failure to visit. Otherwise, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON II and ARNOLD B. GOLDIN, JJ., joined.

G.W. Sherrod III, Henderson, Tennessee, (on appeal only) for the appellant, Tabitha M.

Benjamin S. Harmon, Savannah, Tennessee, for the appellees, Jessie M. and Rachel M.

Melissa G. Stewart, Savannah, Tennessee, Guardian Ad Litem for Paetyn M.

# OPINION

## I.

### A.

On November 12, 2015, in the Juvenile Court of McNairy County, Tennessee, Jessie M. ("Father"), the father of Paetyn M., filed a petition to terminate the parental rights of Paetyn's mother, Tabitha M. ("Mother"). As grounds for termination, Father alleged abandonment by willful failure to visit and by willful failure to support. *See* Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2016). Curiously, Father also alleged a ground for termination only applicable to putative fathers, "fail[ure], without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means." *Id.* § 36-1-113(g)(9)(A)(i).

Mother answered Father's petition, denying the bulk of Father's allegations. She also requested custody and child support from Father in what she characterized as a "counter-complaint."

Just over a year after he filed his petition for termination of parental rights, Father joined his wife, Rachel M. ("Stepmother"), in filing an amended petition for termination of parental rights and for adoption. The amended petition explained that Father had married Stepmother on July 29, 2016, and that Father was joining in the petition "for the purpose of consenting to the adoption of [Paetyn]." The amended petition omitted failure to pay prenatal, natal, and postnatal expenses but otherwise alleged the same grounds for terminating Mother's parental rights as the original petition.[1]

On July 18, 2017, Mother's counsel moved to withdraw for nonpayment of his fees. At a hearing held the same day, the juvenile court, with Mother's consent, granted counsel leave to withdraw and appointed counsel for Mother. Apparently, as part of the same hearing, the court also set the case for trial for August 23, 2017.

### B.

On the day of the trial, Mother's appointed counsel appeared, but Mother did not. When the court inquired about her absence, counsel explained that Mother had been out

---

[1] The amended petition also included statutory requisites for petitions to terminate that had been omitted in Father's original petition. Subsection (d) of the parental termination statute, Tennessee Code Annotated § 36-1-113, requires petitions to contain certain elements. Tenn. Code Ann. § 36-1-113(d). Father's original petition did not contain any of the content required by subsection (d)(3)(A) or (C). The original petition also omitted the notice regarding the special provisions for appeals of termination decisions. *See* Tenn. R. Civ. P. 9A.

of work due to a staph infection. Counsel said he told Mother that he had not "had any luck getting [the case] continued as of yet" and that, as a result, Mother needed to be present.[2] According to counsel, Mother had called his office forty-five minutes prior to explain that she would be running late because her ride could not bring her from Dyersburg to Selmer, where the trial was set.

The court announced its intention to proceed once the guardian ad litem arrived, who was also running late. Mother's counsel then moved for a continuance based on Mother's staph infection and counsel's concern that Mother was "contagious." The court asked several questions, including when counsel had last spoken with Mother and when Mother was diagnosed with her condition. Counsel stated that he had spoken with Mother the preceding day and that morning. He believed Mother was diagnosed with the infection the day before the hearing. He presented the court with some medical records. But counsel conceded that none of the records showed Mother had a staph infection.

The court denied the requested continuance. The court stated, following its review of the records, that it could only find Mother had a "urinary tract infection, which is not sufficient to excuse one's absence . . . for a hearing in terms of . . . parental rights."

Only Father testified during the trial. According to Father, in approximately January 2015, the Department of Children's Services contacted him to pick up Paetyn from Mother's home. Paetyn had been living with Father since he was three months old, but two hours prior to the Department's call, Father had allowed Mother to take the child for a visit. When he arrived at Mother's home, he found "two or three social workers and two or three cops." The Department informed Father that Mother had methamphetamine in her system and that Paetyn needed to be tested for exposure.

Father claimed that Mother admitted to drug use after that incident. He testified that, during the course of a deposition he attended, Mother confessed to methamphetamine use in February 2015 and April 2016.

At the time of the trial, Mother had not seen Paetyn in over two years. Mother last exercised visitation when the child was one year old; Paetyn was age four and one-half at trial. Father stated that Mother's visits were inconsistent, lasting "an hour, hour and a half maybe," and stopped after six or eight visits. Mother petitioned for visitation in October 2016, and although she was awarded supervised visitation, Mother was unable to exercise it because she was arrested for shoplifting shortly thereafter.

When it awarded custody of Paetyn to Father, the court ordered Mother to pay Father child support of $116.00 per month. Father testified to receiving "about $300 roughly" from Mother. The last payment was received "[a]bout a year and a half" prior

---

[2] The technical record does not include any motions requesting a continuance.

to the trial. When asked if he had received any other form of support from Mother such as diapers, clothes, or gifts for the child, Father denied receiving any such support.

Father lived with Stepmother, Paetyn, Stepmother's son, who was about the same age as Paetyn, and an eight-week old baby boy that he shared with Stepmother. Father was employed and asserted he had the ability to financially support the family. While Father worked, Stepmother cared for the children at home. According to Father, Paetyn had bonded with Stepmother and referred to her as "Mom." Father also testified to Stepmother's desire to adopt Paetyn.

After Father's testimony, the juvenile court announced that it would grant the petition to terminate Mother's parental rights. In its written order, the court concluded that Father and Stepmother had "proven by clear and convincing evidence that Mother ha[d] abandoned the minor child by willingly failing to exercise any meaningful visitation and willingly failing to provide any meaningful support." The court further concluded that Father and Stepmother had "proven by clear and convincing evidence that Mother ha[d] failed to remedy the conditions that led to the minor child's removal." Finally, the court determined that it was in Paetyn's best interest to terminate Mother's parental rights.

## II.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. Our Legislature has identified those situations in which the State's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g).

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d

4

586, 596 (Tenn. 2010). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *Id.* "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

## III.

### A.

As an initial matter, Mother submits the juvenile court lacked subject matter jurisdiction because Father lacked standing to terminate her parental rights to their child. Without subject matter jurisdiction a court lacks the "power to adjudicate a particular type of controversy," and any resulting judgment is void. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). Our "determination of whether subject matter jurisdiction exists is a question of law, [so] our standard of review is de novo, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Because in parental termination cases "a statute creates [the] cause of action and designates who may bring [the] action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004). Standing to file the petition to terminate parental rights "is a necessary prerequisite to the court's exercise of subject matter jurisdiction." *Id.* In other words, "a court does not have subject matter jurisdiction to hear such a petition unless the party filing the petition has standing." *Id.*

A child's parent, such as Father, has standing to petition to terminate the parental rights of another alleged parent, such as Mother, but only in limited circumstances. *See* Tenn. Code Ann. § 36-1-113(b)(1), (g)(10)(A). At the time Father filed his original and amended petitions, a parent could only petition to terminate the parental rights of the other parent if the respondent "parent ha[d] been found to have committed severe child sexual abuse under any prior order of a criminal court" or if the respondent parent "ha[d] been convicted of aggravated rape pursuant to § 39-13-502, rape pursuant to § 39-13-503, or rape of a child pursuant to § 39-13-522, from which crime the child was conceived."[3] *Id.* § 36-1-113(b)(1), (g)(10)(A), (g)(11)(A)(i).

---

[3] Effective March 14, 2018, a parent can also petition to terminate the parental rights of another alleged parent if the respondent parent "has been convicted of attempted first degree murder or attempted second degree murder of the child's other parent or legal guardian." 2018-1 Tenn. Code Ann. Adv. Legis. Serv. 70 (LexisNexis).

As Mother points out, Father's original petition did not allege that Mother had been found by a criminal court to have committed severe child sexual abuse or that Mother had been convicted of rape. Thus Father had no standing to petition to terminate Mother's parental rights. We agree with that assessment.

But as noted above, Father and Stepmother jointly filed an amended petition for termination of parental rights and for adoption. A prospective adoptive parent does have standing to petition to terminate parental rights. *Id.* § 36-1-113(b)(1).

Mother suggests that Stepmother's petition for adoption is a subterfuge and that Father was merely attempting to correct a "grievous, and potentially fatal, error" in his original petition. Mother notes that Stepmother "did not testify [at trial] and only scant references were made to this potential adoptive parent." Mother further notes that Father only joined the amended petition for the purpose of consenting to the adoption. We do not find either argument convincing. Although Stepmother bore the burden of proof at trial, *see In re Bernard T.*, 319 S.W.3d at 596, nothing compelled her to testify. And the parental termination statutes contemplate that a child's parent may join in a petition to terminate parental rights for the purpose of consenting to an adoption by a stepparent. *See* Tenn. Code Ann. § 36-1-117(f) ("[W]here the stepparent of a stepchild seeks to adopt a stepchild, the co-signing of the petition by the child's parent who is the spouse of the petitioner shall not affect the existing parent/child legal relationship between that parent and the parent's child who is the subject of the adoption petition by the stepparent of the child.").

We conclude that the juvenile court had subject matter jurisdiction in light of the amended petition for termination of parental rights and for adoption filed jointly by Father and Stepmother. The amended petition followed Father's marriage to Stepmother, which came after the filing of Father's original petition. The notion that Stepmother might seek to adopt Paetyn, her stepson, is not that unusual. *See, e.g., In re Angela E.*, 303 S.W.3d at 243 (The mother and stepfather petitioned for termination of parental rights and for adoption); *In re Alivia F.*, No. M2016-02328-COA-R3-PT, 2018 WL 623599, at *1 (Tenn. Ct. App. Jan. 30, 2018) (The father and stepmother petitioned for termination of mother's parental rights and for adoption); *In re Ian B.*, No. M2015-01079-COA-R3-PT, 2016 WL 2865875, at *1 (Tenn. Ct. App. May 11, 2016) (Mother and stepfather petitioned for adoption and for termination of parental rights). And our courts have recognized that a parent may amend a petition for termination of parental rights to meet the requirements of the termination statute by adding a petition for adoption by a stepparent. *See In re Angela E.*, 303 S.W.3d at 248 (original petition for termination of parental rights filed by mother superseded by an amended petition for termination of parental rights and stepparent adoption); *In re A.S.C.*, No. E2013-01830-COA-R3-PT, 2014 WL 4269114, at *5-6 (Tenn. Ct. App. Aug. 29, 2014) (mother

amended her petition to terminate to allow adoption by stepfather, which became the pleading for measuring abandonment by failure to support or visit).

**B.**

Mother next argues that the juvenile court erred in not granting her a continuance of the trial based on her medical issues. Decisions regarding continuances are discretionary in nature. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

The party seeking a continuance bears the burden of establishing the circumstances that justify the continuance. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). Decisions regarding the grant or denial of a continuance are fact-specific and "should be viewed in the context of all the circumstances existing" at the time of the request. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). The circumstances include: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (footnotes omitted).

Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc.*, 312 S.W.3d at 524. In reviewing discretionary decisions, we consider: "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and . . . review the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

Mother's appeal challenges the factual basis for the court's denial of her request for a continuance. She argues that the court "ignored the documentation, dated the day before [the trial], from the Reelfoot Family Walk-In clinic in Dyersburg, Tennessee which stated that [Mother] was not cleared to return to work for a period of four (4) days." In her words, "[i]t defies logic that a primary care provider can tell a person that they are too sick to work, but the court find that they are well enough travel [sic] over one hundred and fifty miles round trip to be in court."

7

The problem with Mother's argument is that we have no way of determining whether the court "ignored the documentation." As Mother acknowledges, the documentation submitted to the court on the morning of the trial is not part of the record on appeal. From the transcript, it appears that the court reviewed the documentation submitted by counsel and determined that Mother had been diagnosed with a urinary tract infection, which the court deemed an insufficient basis to grant the requested continuance.

From this record, we cannot conclude that the court abused its discretion in denying Mother's request for a continuance. We agree that Mother was prejudiced by the denial of the continuance, but the other circumstances support the court's decision. The parental termination case had been pending over a year and nine months since the filing of the original petition and nine months since the filing of the amended petition. Statute mandates that a hearing on a petition for termination for parental rights "take[] place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). Mother's stated reason for the continuance, a staph infection,[4] was apparently not supported by the documentation provided. And we disagree with the notion that a medical condition that would excuse a person from work would necessarily prevent an appearance at trial. Although that might be the case, it was incumbent on Mother to establish that as part of her burden to justify the requested continuance. *See Osagie*, 91 S.W.3d at 329.

## IV.

Turning to the merits of the judgment to terminate parental rights, Mother argues that the evidence does not clearly and convincingly support the juvenile court's finding that she abandoned Paetyn by willful failure to visit and willful failure to support. Mother also argues that the evidence does not clearly and convincingly support the finding that termination of her parental rights was in the best interest of Paetyn.

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de

---

[4] In her brief, in the statement of facts, Mother states that "[i]t should be noted that approximately one month before the trial date in this case that counsel for [Mother] was allowed to withdraw from the matter and Mr. Benjamin King was appointed to represent [Mother] . . . ." But the late substitution of counsel was never offered as a basis for the continuance before the juvenile court nor is it offered as a basis for reversing the denial of the request.

8

novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

## A.

Mother failed to challenge all the grounds for termination of parental rights relied on by the court. Nonetheless, we must "review the trial court's findings as to each ground for termination . . . regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

### 1. Abandonment

One of the statutory grounds for termination of parental rights is "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). The statute provides "five alternative definitions for abandonment as a ground for the termination of parental rights." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005); *see also* Tenn. Code Ann. § 36-1-102(1)(A) (Supp. 2016) (defining the term "abandonment"). The juvenile court concluded that Mother abandoned Paetyn under the first definition. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i).

Under the first definition of abandonment, a parent's parental rights may be terminated if the parent "willful[ly] fail[ed] to visit, to support, or to make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013); *see also* Tenn. Code Ann. § 36-1-102(1)(A)(i). Here, we measure the four-month period from the amended petition, which was filed on November 23, 2016, not the original petition. Because Father lacked standing to file the original petition, the original petition "was a nullity from the start." *See In re A.S.C.*, 2014 WL 4269114, at *6; *see also In re Angela E.*, 303 S.W.3d at 248 & n.9 (amended petition for termination of parental rights and stepparent adoption superseded the original petition for termination of parental rights filed by mother alone).

In order to terminate parental rights on the ground of abandonment, the court must conclude that the abandonment was willful. While the failure to visit or support presents a question of fact, whether that failure is willful presents a question of law. *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864.

We conclude that the evidence was clear and convincing that Mother abandoned Paetyn by willfully failing to visit. Father testified that, by the time of trial, Mother had not seen her child in "almost two and a half years." He later stated that it had been at

9

least two years since Mother had seen Paetyn. Even using the more conservative estimate, Father's testimony established that Mother had not seen her child at all during the four-month period preceding the filing of the amended petition. He also denied that Mother had reached out to him about visiting with the child at any point in time. Mother failed to visit despite, according to Father, attending multiple court hearings involving her child.

The evidence does not support the finding that Mother abandoned Paetyn by willfully failing to pay support. Father stated that he last received a child support payment "[a]bout a year and a half ago," but Father offered little to no evidence of Mother's capacity to pay or provide support. Father did respond affirmatively to the following compound question: "So there – she's willing and – or able to pay child support?" But such testimony alone is insufficient to carry Father's burden of proof. On this record, we are unable to determine if Mother had the capacity to support the child. *See id.*

2. Persistence of Conditions

The juvenile court also found termination of Mother's parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." *See In re Audrey S.*, 182 S.W.3d at 871. The persistence of conditions ground focuses "on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *Id.* at 874. The goal is to avoid having a child in foster care for a time longer than reasonable for the parent to demonstrate the ability to provide a safe and caring environment for the child. *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds, In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). So the question before the court is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

We conclude that reliance on the ground of persistence of conditions was not appropriate in this instance. Although counsel for Father and Stepmother argued for this ground in closing arguments, the amended petition does not allege persistence of conditions as a ground for termination of Mother's parental rights. As we have previously stated, "Informality is not the hallmark of termination proceedings in light of the constitutional magnitude of the rights at stake." *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004). Reliance on grounds for termination of parental rights not asserted in the petition not only places the respondent parent at a disadvantage, *see In re W.B.*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *10 (Tenn. Ct. App. Apr. 29, 2005), it fails to comply with the constitutional safeguards afforded parents. *See In re Landon H.*, No. M2011-00737-COA-R-PT, 2012 WL 113659, at *4 (Tenn. Ct. App. Jan. 11, 2012).

Having determined that one statutory ground for termination was proven by clear and convincing evidence, we must determine whether termination of Mother's parental rights is in the child's best interest. Because "[n]ot all parental misconduct is irredeemable," our parental termination "statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). Tennessee Code Annotated § 36-1-113(i) lists nine factors that courts may consider in making a best interest analysis. In reaching a decision, "the court must consider all of the statutory factors, as well as any other relevant proof any party offers." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

The focus of this analysis is on what is best for the child, not what is best for the parent. *In re Marr*, 194 S.W.3d at 499. But we cannot discount the value of the parent-child relationship. *Id.* § 36-6-401(a) (2014). So the analysis should also take into account "the impact on the child of a decision that has the legal effect of reducing the parent to the role of a complete stranger." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006). Although "[f]acts relevant to a child's best interests need only be established by a preponderance of the evidence, . . . the combined weight of the proven facts [must] amount[] to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535.

In making its best interest determination, the juvenile court relied primarily on Mother's visitation history, the effect of a change of caregivers and physical environment, and Mother's payment of child support. *See* Tenn. Code Ann. § 36-1-113(i)(3), (5), & (9). The court found that Father and Stepmother had been the primary caregivers since the child was just a few months old and that a change in environment would be detrimental for the child. The child had developed a meaningful relationship with Stepmother, while there was no evidence of any bond between Mother and Paetyn. The court also found that Mother had not maintained regular visitation.

The evidence does not preponderate against the court's factual findings. We conclude that the facts as found by the court clearly and convincingly establish that termination of Mother's parental rights is in Paetyn's best interests.

## V.

We conclude that the juvenile court had subject matter jurisdiction over the amended petition to terminate Mother's parental rights and for adoption. Although Father could not petition to terminate Mother's parental rights alone, Father could join in the petition filed by his wife, the child's stepmother. And on this record, we cannot

conclude that the court abused its discretion in denying Mother's request for continuance of the trial.

Finally, we affirm the termination of Mother's parental rights. We agree with Mother that the evidence does not support one of the grounds for termination of her parental rights, and based on our own review, we conclude that the juvenile court erred in relying on a statutory ground not alleged in the amended petition. Still, the evidence in the record is clear and convincing that Mother abandoned her child by willful failure to visit and that termination is in the child's best interests.

_____
W. NEAL McBRAYER, JUDGE