IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2023 Session

## WANDA SUE AVERWATER v. JAMES PAUL AVERWATER

**Appeal from the Chancery Court for Rutherford County**
**No. 15CV-1326      Philip E. Smith, Judge**

_____

**No. M2020-00851-COA-R3-CV**

_____

In this divorce, the trial court evenly divided the marital estate and denied the wife's request for alimony.  It also ordered wife to pay the attorney's fees and costs of a third party.  On appeal, the wife challenges the court's decisions on multiple grounds.  After a thorough review, we find that the court erred in not dividing the profit from a business the husband created during the pendency of the divorce as marital property.  And the court erred in ordering the wife to pay attorney's fees and costs.  We affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S, and ANDY D. BENNETT, J., joined.

Donald K. Vowell, Knoxville, Tennessee, for the appellant, Wanda Sue Averwater.

Donald Capparella, Nashville, Tennessee, and John J. Hollins, Jr. and LB McCullum, Franklin, Tennessee, for the appellee, James Paul Averwater.

## OPINION

### I.

### A.

Wanda Sue Averwater ("Wife") and James Paul Averwater ("Husband") were married in 1992.  At the time, both worked for a construction company — Wife as an operations manager and Husband as a construction superintendent.  Three years later, they

started their own construction company, Averwater Construction, Inc. And they had one child together ("Daughter").

After 27 years of marriage, Wife filed for divorce in September 2015. She alleged irreconcilable differences and inappropriate marital conduct as grounds. She requested an equitable division of the marital estate and an award of alimony and attorney's fees. Husband filed an answer and counter-complaint. He denied Wife's allegations and instead alleged that she was guilty of inappropriate marital conduct.

The case was initially set for a two-day trial in June 2016. But the parties needed more time for discovery, so they agreed to continue the case until September 2016. Over the next nine months, the case was continued three more times and eventually set for trial in August 2017. Less than two weeks before the August 2017 trial date, however, the court struck the case from its docket and sent the parties to mediation. When mediation proved unsuccessful, the case was again set for trial, now in December 2017. But then the judge presiding over the case passed away. And the remaining judges in the judicial district recused themselves. So the case was reassigned by interchange to a judge from another district.

Soon after the reassignment, $380 was deposited into an Averwater Construction account at First National Bank — an account that was supposed to be closed. Wife contacted the bank. The bank told her that there had been a clerical error, but it would not provide her with any more information. Suspicious that Husband was hiding money, Wife subpoenaed First National Bank for all records related to Husband and Averwater Construction. The bank responded with a letter informing Wife that it did not have any records or active accounts in Husband's name. Dissatisfied, Wife issued a subpoena and notice of deposition for several of the bank's employees.

First National Bank moved to quash the subpoena and depositions. After a motion hearing in February 2019, the court ordered the bank to provide Wife's counsel with "a full and complete explanation of the deposit," but instructed counsel to "not divulge said information to anyone including Wife unless otherwise ordered by the Court." The court also ruled that Wife's counsel could conduct discovery "of the individual whose account ultimately received the funds."

The bank provided Wife's counsel an explanation on April 2019, one month before the new trial date. It revealed that Daughter was a borrower of the bank, and one of her loan payments was accidentally deposited into the Averwater Construction account. When the bank learned of the mistake, it moved the funds into the correct account. Based on this explanation, Wife deposed Daughter, who confirmed the bank's explanation. Still dissatisfied, Wife moved to continue the trial for a seventh time and to seek additional discovery from the bank. The court denied her motions, and the case finally proceeded to trial on May 7, 2019.

2

After three days of trial, Wife fired her attorney. She requested another continuance and a disbursement from the marital estate so that she could hire new counsel. The court granted the request in part. It continued the case until September 2019 with the understanding that Wife had identified substitute counsel. But the court did not allow her to draw additional funds from the marital estate.

One month before trial was set to resume, Wife moved for another continuance on the basis that she had not yet obtained counsel. She apparently found an attorney willing to take her case, but the attorney was not available until December 2019. The court denied Wife's motion, and the case resumed as scheduled.

Wife represented herself on the fourth and fifth days of trial. On the fourth day, the court ended the proceedings in the early afternoon because Wife did not bring extra copies of exhibits she intended to introduce into evidence. On the fifth day, the proceedings again ended early; Wife suffered a panic attack during a break and could not proceed. On January 7 and 8, 2020, the final two days of the trial, Wife was represented by counsel.

B.

The proof at trial showed that, for most of their marriage, Husband and Wife ran Averwater Construction together. The company primarily built residential homes and occasionally did repair work or built additions to existing homes. Wife handled the administrative side of the business while Husband managed the job sites. By the time Wife filed for divorce, the couple was making between $200,000 and $300,000 per year from the business. But the parties decided to shut it down when they separated in 2015.

Husband and Wife were also involved in another business called Puckett Station. It was a general partnership formed to develop a large tract of farmland in Murfreesboro, Tennessee. Husband and Wife owned 50 percent of the partnership, and John Floyd owned the other 50 percent. The development was nearly complete by the time of trial, with only a few lots left to sell. But the business needed to stay open for at least a few more years to honor several outstanding maintenance bonds. During the pendency of the divorce, Husband and Wife lived off draws from their Puckett Station capital account.

Much of the trial was devoted to Wife's claim that Husband was trying to hide money from her. As evidence, Wife pointed to the accidental deposit into the Averwater Construction account; transfers of property between Puckett Station and Mr. Floyd's company, Ole South; and the creation of Spring Creek, LLC, a construction company formed by Husband after Wife filed for divorce. Wife believed that Husband, Mr. Floyd, and others were conspiring to shield money and property so that it would not be included as part of the marital estate.

3

In response to Wife's allegations, Mr. Floyd and one of his employees testified that the property transfers between Puckett Station and Ole South were in the normal course of business. As for Spring Creek, Husband explained that he only created the company to build one home for a longtime customer of Averwater Construction. And after he finished that job, he dissolved the company and let his contractor's license lapse into retirement status. Still, he conceded that the $34,000 profit earned from the Spring Creek job was marital property.

While the parties had business success, their marriage did not fare as well. Their home life was a major point of contention. Husband was severely allergic to cats and bothered by cigarette smoke. Yet Wife smoked inside and kept many cats and dogs as pets. Eventually, Wife moved to the third floor of the house with the animals while Husband stayed on the first floor with Daughter.

Daughter testified that Wife isolated herself on the third floor. It was filthy. No one went up, and Wife rarely came down. Daughter believed that this was a significant factor in the breakdown of her parents' marriage. But Wife disputed this. She did not think that Husband had any justifiable complaints about her actions other than her not sleeping with him often enough.

Another point of contention was the parties' relationships with their children. According to Husband, Wife did not have a meaningful relationship with Daughter or her two sons from a previous marriage. Husband thought that Wife's behavior was the primary cause for the breakdown of those relationships. Wife agreed that the relationships were strained, but she blamed Husband.

Daughter testified extensively about her relationship with Wife. She told the court that it began to deteriorate during her teenage years and had only worsened since then. When Daughter testified, the two had not spoken for several years. And Wife had not been invited to Daughter's recent wedding or law school graduation. Daughter blamed Wife for the state of their relationship, but Wife again blamed Husband.

C.

In its final divorce decree, the trial court found Wife was at greater fault for the demise of the marriage, so it granted Husband a divorce on the ground of inappropriate marital conduct. *See* Tenn. Code Ann. § 36-4-129(b) (2021) (permitting a court to "grant a divorce to the party who was less at fault"). The court also determined that there was no proof of fraud by Husband or anyone else.

The court then classified and divided the parties' property. Husband and Wife stipulated to the classification and valuation of most of their property. But they disputed $190,444.49 held within one of Husband's retirement accounts. Husband contended that

4

the money was separate property he brought into the marriage. And the funds were never commingled with or transmuted into marital property. Wife disagreed. She argued that Husband could not prove that the assets in the account predated the marriage. So the entire account was marital property.

The court resolved the factual dispute in favor of Husband and awarded him the disputed funds as separate property. It then ordered the parties to liquidate most of the marital estate and divide the proceeds evenly. The court also denied Wife's request for alimony and both parties' requests for attorneys' fees. In a separate order entered two weeks later, the court ordered Wife to pay First National Bank for fees and costs incurred opposing her subpoena and requests for additional discovery.

## II.

Wife raises several issues on appeal. She argues that the trial court did not afford her fair treatment as a pro se litigant; improperly denied her requests for continuances; misclassified certain property; improperly denied her alimony; and improperly granted First National Bank an award of fees and costs. For his part, Husband requests an award of attorneys' fees for this appeal.

As this is a nonjury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* TENN. R. APP. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). Our review of questions of law is de novo with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

## A.

We first address Wife's argument that the trial court did not afford her fair treatment as a pro se litigant. A party is entitled to fair treatment by our courts when they decide to represent themselves, but "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). While pro se litigants are afforded a certain amount of leeway, they are ultimately still subject to the same substantive and procedural rules imposed on represented parties. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

Wife points to several examples of the court's actions that she believes constitute unfair treatment. Most of these examples simply restate other issues she has raised on appeal.[1] As for her remaining complaints, we find no basis for relief. The difficulties Wife experienced while proceeding pro se were the result of her "legal naivete" and the "very heavy burden" she faced trying a case without representation, not unfair treatment by the trial court. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 651-52 (Tenn. Ct. App. 1988).

B.

Wife next argues that the trial court abused its discretion in denying her requests for continuances before and during trial. The party seeking a continuance bears the burden of establishing the circumstances that justify the continuance. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). Decisions regarding the grant or denial of a continuance are fact-specific and "should be viewed in the context of all the circumstances existing" when the request is made. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). Among the circumstances are "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (footnotes omitted).

Because the decision to grant or deny a continuance "lies in the sound discretion of the court," we will not disturb it on appeal "unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). "Where adequate time for trial preparation and notice of trial date are furnished, the proper procedure is to file an affidavit showing lack of preparation and a 'strong excuse' for changing the trial date." *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (footnote omitted).

One basis for Wife's request for a continuance was the need to depose employees from First National Bank. We review a trial court's rulings on discovery issues using the same abuse of discretion standard used for rulings on continuances. *See Lee Med. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). When Wife requested a continuance to obtain additional discovery from the bank, the case had been pending for almost four years. Wife had already received an explanation from the bank about the deposit. And she had deposed Daughter, who provided the same explanation as the bank. Although Wife was dissatisfied with the explanations she received, she did not show how further discovery from the bank

---

[1] The examples include leading questions posed by the court to witnesses and sua sponte evidentiary rulings. To the extent Wife seeks review of those issues, they were not preserved below or properly raised on appeal, so they are waived. *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (recognizing "the general rule that questions not raised in the trial court will not be entertained on appeal"); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (an issue is "waived where it is argued in the brief but not designated as an issue.").

would resolve her concerns. So the court did not abuse its discretion in denying her request for a continuance on this basis.

Another basis for Wife's request was the need to hire substitute counsel. Wife argues that her efforts to hire new counsel were thwarted by the court's denial of her request for additional pendente lite support. According to Wife, the denial of both requests forced her to represent herself for two days of trial.

Trial courts also have "broad discretion" in awarding pendente lite support. *See Brock v. Brock*, 941 S.W.2d 896, 903 (Tenn. Ct. App. 1996). And, under the circumstances, we discern no abuse of discretion in either decision by the court. Wife fired her attorney after three days of trial.[2] By that point, the case had been pending for four years and had previously been continued six times. Still, the court granted her a short continuance on the understanding that she had identified substitute counsel. But in the six weeks that followed, Wife did not obtain representation. And, while she contends that she could not afford to hire a lawyer, she had already received over $500,000 from the marital estate during the pendency of the divorce.

C.

Wife's issue with the court's classification of property focuses on only two assets. But Husband argues that Wife waived this issue because she failed to furnish a proper Rule 7 table. Where the classification of property or the division or allocation of marital property are at issue, Rule 7 of this Court requires "the brief of the party raising the issue" to include, either in the body of the brief or as an appendix, a table of property and debt and their valuations. TENN. CT. APP. R. 7(a). The table must "list *all* property and debts considered by the trial court, including (1) all separate property, (2) all marital property, and (3) all separate and marital debts." *Id.* (emphasis added).

Here, Wife's Rule 7 table only included the two assets that she contends were not properly classified: the disputed retirement account and the profit from Spring Creek. This does not satisfy Rule 7's requirement that the table "comprehensibly lists the trial court's division of a divorced couple's assets." *Blount v. Blount*, No. E2017-00243-COA-R3-CV, 2018 WL 1433198, at *3 (Tenn. Ct. App. Mar. 22, 2018); *see also Robbins v. Robbins*, No. E2017-01427-COA-R3-CV, 2018 WL 3954323, at *14 (Tenn. Ct. App. Aug. 16, 2018) (holding that a Rule 7 table is deficient when it does not include the entire marital state but instead "simply itemizes various funds, properties and debts"). Still, where possible, cases should "be decided on their merits rather than on strict compliance with the rules." *Dilley v. Dilley*, No. M2009-02585-COA-R3-CV, 2011 WL 2015395, at *9 (Tenn. Ct. App. May

---

[2] Despite Wife's contentions that her previous counsel performed poorly, the trial court indicated Wife was well represented during the first three days of trial.

23, 2011). And a Rule 7 table's deficiencies may be overlooked when they do not impact our ability to address the issues raised on appeal. *See Tarver v. Tarver*, No. W2017-01556-COA-R3-CV, 2019 WL 1200274, at \*14 (Tenn. Ct. App. Mar. 13, 2019); Tenn. Ct. App. R. 1(b). That is the case here.

Only marital property is subject to division. Tenn. Code Ann. § 36-4-121(a)(1) (Supp. 2022); *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). So a court must classify each of the parties' property interests as either separate or marital property before dividing the marital estate. *See Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Classification is a question of fact. *Id.*

Wife first contends that the trial court erred in classifying a portion of a retirement account as Husband's separate property. She acknowledges that assets held by a spouse before marriage in a retirement account are separate property, Tenn. Code Ann. § 36-4-121(a)(4)(A), but she argues that Husband did not prove that he brought the disputed funds into the marriage.

The only testimony about the disputed funds came from Husband's expert, Mike Hallum. Mr. Hallum testified that he reviewed the parties' IRA statements and tax returns and traced the funds through several accounts back to their original source. No contributions were made to the accounts during the marriage. Mr. Hallum testified that the disputed funds were Husband's before the marriage, and Wife offered no proof to rebut his testimony.

Wife does not dispute that Mr. Hallum traced the funds, but she argues that he did not trace them back to before the marriage. She points to his expert report, which was introduced as an exhibit at trial. The report does not list any accounts before 1995, three years after the parties were married. So, Wife reasons, Mr. Hallum did not establish that any portion of the funds existed before the marriage.

But Mr. Hallum testified that he traced the funds back to their origin. His report showed that the accounts were already funded in 1995, and no contributions were made during the marriage. And Mr. Hallum's testified that the contested funds were rollovers from pre-marital employer pension and profit-sharing plans. And the court credited his testimony. We cannot say that the evidence preponderates against the court's finding.

Wife next contends that the court erred in not dividing the profit from Spring Creek as marital property. The court did not discuss the money at all in its final order. Although Husband agrees that the profit is marital property, he argues that the court's distribution of the estate was equitable, so it should not be disturbed on appeal. *See Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447, at \*3 (Tenn. Ct. App. June 26, 2012) (holding that an error in the classification of property is harmless when "the overall division of the parties' property was equitable").

8

We faced a similar situation in *Dortch v. Dortch*. There, the trial court was "extremely explicit" with its intention to divide the marital estate evenly. No. M1999-02053-COA-R3-CV, 2001 WL 799752, at *3 (Tenn. Ct. App. July 17, 2001). But based on an "oversight," the court awarded the wife more property than the husband. *Id.* We corrected the court's mistake on appeal and reduced the equalization payment the husband was ordered to pay to achieve an equal division of the marital estate as intended by the trial court. *Id.* at *4.

We adopt a similar approach here. Neither party disputes that the profit from Spring Creek is marital property. Nor do they challenge the court's decision to divide the marital estate equally. The court's failure to address the Spring Creek profit was solely the result of an oversight. So Husband must pay Wife half of the profit.

D.

Wife next takes issue with the trial court's failure to award at least nominal alimony. "[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In exercising that discretion, the court must consider a non-exclusive list of statutory factors found in Tennessee Code Annotated § 36-5-121(i). *Id.* at 109-10. Alimony decisions are factually driven and "involve[] the careful balancing of many factors." *Id.* at 105. The two most important factors are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 110.

Nominal alimony is a type of alimony *in futuro*. *See Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *7 (Tenn. Ct. App. Sept. 27, 2013). It enables a court "to retain jurisdiction to alter the amount [of alimony] later if the circumstances warrant it." *Justice v. Justice*, No. M1998-00916-COA-R3-CV, 2001 WL 177060, at *5 (Tenn. Ct. App. Feb. 23, 2001). Nominal alimony may be appropriate when "there is some uncertainty about one party's present or future finances, health, or earning power." *Id.* This can occur "when there is uncertainty regarding the future needs of the disadvantaged spouse or when the obligor spouse's income potential has not been fully realized." *Id.* (internal citations omitted).

Here, Wife contends that nominal alimony is appropriate because Husband could start building homes again, at which point he would have the ability to pay alimony. To do so, Husband would need to reactivate his contractor's license, hire employees, obtain insurance, pledge assets, and acquire empty lots to build on. Husband testified that he did not intend to come out of retirement, and the court found his testimony credible.

We discern no abuse of discretion in the denial of alimony to Wife. At trial, Wife and Husband were 58 and 61 years old, respectively. *See* Tenn. Code Ann. § 36-5-121(i)(4)

9

(Supp. 2022). Both worked for Averwater Construction for most of the marriage but largely retired after Wife filed for divorce. *See id.* § 36-5-121(i)(1). Except for the home built by Spring Creek, neither spouse worked during the pendency of the divorce. *See id.* And they had similar monthly expenses and abilities to pay. *See id.*; *see also Gonsewski*, 350 S.W.3d at 110. Husband and Wife received an equal share of the marital estate. *See* Tenn. Code Ann. § 36-5-121(i)(1). And the court found that Wife was more at fault for the breakdown of the marriage. *See id.* § 36-5-121(i)(11).

E.

Wife next challenges the court's award of fees and costs to First National Bank. Throughout the litigation, Wife spent great time and energy investigating the accidental deposit into the Averwater Construction bank account. But when she was not satisfied with the explanations she received from the bank and Daughter, Wife issued a subpoena and filed a notice of deposition. The court quashed the subpoena for not complying with Financial Records Privacy Act. *See id.* § 45-10-107 (2020). But the court ordered Wife to pay First National Bank's attorney's fees and costs under the Uniform Interstate Depositions and Discovery Act. *See id.* § 24-9-207 (2017) (allowing for an award of reasonable attorney's fees and expenses incurred in defending against a subpoena if the court grants a motion to modify or quash the subpoena). The subpoena Wife issued was not subject to the Uniform Interstate Depositions and Discovery Act. That statute only applies when a party submits a "foreign subpoena" for issuance in this state. *See id.* § 24-9-203.

Husband concedes that the trial court erred in relying on Uniform Interstate Depositions and Discovery Act, but he argues that we should nevertheless affirm the award under the Financial Records Privacy Act. Under the Financial Records Privacy Act, the issuer of a subpoena must "pay the financial institution's reasonable expenses incurred in complying with the subpoena." *Id.* § 45-10-109 (2020). Under these circumstances, we decline to do so.

F.

Both Husband and Wife request an award of attorney's fees on appeal under Tennessee Code Annotated § 36-5-103(c). This statute gives us the discretion to award a plaintiff spouse reasonable attorney's fees incurred "in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties." Tenn. Code Ann. § 36-5-103(c) (2017). The trial court did not award alimony. And neither child support nor child custody were at issue here. So we decline to award either party attorney's fees based on this statute.

10

Husband also requests an award of attorney's fees for defending against a frivolous appeal. *Id*. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn.1977). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). This appeal was not devoid of merit. Wife "made legitimate arguments and cited to relevant law and facts." *See Coolidge v. Keene*, 614 S.W.3d 106, 120 (Tenn. Ct. App. 2020). Her appeal was unsuccessful, not frivolous. *See id.* So we decline to award fees for frivolous appeal.

## III

The trial court did not abuse its discretion in denying Wife's requests for continuances, pendente lite support, or nominal alimony. And the evidence does not preponderate against the court's determination that part of Husband's retirement account was separate property. We modify the division of marital property to include the profit from Spring Creek, LLC. We reverse the award of attorney's fees and expenses, and we decline to award attorney's fees on appeal. This case is remanded for entry of a judgment in favor of Wife for one-half of the profits from Spring Creek, and for such further proceedings as may be necessary and consistent with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE
