IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2002 Session

## DENNIS OSA OSAGIE v. PEAKLOAD TEMPORARY SERVICES

**Appeal from the Circuit Court for Davidson County**
**No. 01C-232     Hamilton V. Gayden, Jr., Judge**

_____

**No. M2001-00852-COA-R3-CV - Filed May 16, 2002**

_____

An employee of a temporary services agency sued the agency for non-payment of wages and for discrimination. The trial court dismissed the claim for non-payment with prejudice, and the claim for discrimination without prejudice. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and ROBERT L. JONES, SP. J.,joined.

Dennis Osa Osagie, Nashville, Tennessee, Pro Se.

Elizabeth A. Alexander, Nashville, Tennessee, for the appellee, Peakload Temporary Services, Inc.

**OPINION**

### I. A DISASTROUS DAY AND ITS AFTERMATH

This case arose from a disastrous day of work for the plaintiff, Dennis Osa Osagie. The following account of that day is largely derived from Mr. Osagie's pleadings, and for the purposes of this appeal, we will presume it to be accurate.

Dennis Osagie was homeless at the time of the events described, and was employed by Temporary Peakload Services. On the morning of December 4, 1999, his employer brought him to the Holiday Inn to work. Mr. Osagie arrived at 9:00 a.m., and was assigned to a housekeeper, who showed him how to make up beds in the guest rooms. After Dennis Osagie made up the beds in three rooms, the housekeeper said he was not doing it properly, and told him instead to bring the trash from the hallways to the dumpster.

At some point, Mr. Osagie took a break, and went to an unoccupied room to eat the lunch he had brought. Someone apparently saw Mr. Osagie eating in the motel room, and reported that he was stealing food from the guests. The manager of the Holiday Inn called Peakload to have Mr. Osagie removed from the motel, and told the agency that she would charge him with theft if he returned to the property.

At 2:00 p.m., Patricia and Sidney Creech pulled up in a van from Peakload. Ms. Creech was a dispatcher for the agency, and Mr. Creech was the van driver. Ms. Creech told Mr. Osagie that she was not going to pay him for his work, and that the manager at the Holiday Inn should not have signed his pay slip. Dennis Osagie got into the van, but before the van managed to leave the parking lot, he remembered that he had left his winter coat at the motel.

When he attempted to get out of the van, Mr. and Mrs. Creech restrained him. Sidney Creech allegedly hit Mr. Osagie, and Mr. Osagie hit him back. Mr. Creech suffered a ruptured eardrum from the blow. He subsequently filed a complaint for assault against Mr. Osagie. Because he was unable to make bond, Mr. Osagie took a plea bargain on the charge. On March 23, 2000, he pled guilty to assault, and was sentenced to six months in jail, and ordered to serve 40% of his sentence.

## II. COURT PROCEEDINGS AGAINST PEAKLOAD

On November 3, 2000, Dennis Osagie filed a warrant in the General Sessions Court against Peakload Temporary Services. He claimed that the defendant owed him $25 for five hours of unpaid work. The warrant could not be served, and on November 28, Mr. Osagie filed an alias warrant, which was served. After a hearing on January 5, 2001, the General Sessions Court entered a judgment for the defendant.

Mr. Osagie then filed a hand-written pro se complaint in the Circuit Court. His subsequently filed notice in the Circuit Court, stated that in addition to the $25 he was originally seeking, he was also asking for $250,000 for "discrimination, punity (sic) damages and intimidations, plus any other expense involved during court proceedings like attorney and court expense." Peakload's attorney then filed a Notice of Appearance, and moved the court to set a hearing on March 20, 2001. Mr. Osagie did not object, and the hearing was set for that date.

When Mr. Osagie's case was called, he moved the Circuit Court to continue the case. The defendant objected on the ground that the plaintiff had been given adequate time to prepare for his trial, and that the parties had agreed on the trial date. The defendant also explained to the trial court that it had attempted to resolve this matter by making an Offer of Judgment of $50, double the amount that Mr. Osagie had initially sought for unpaid wages, and that the plaintiff had refused the offer.

The trial court told Mr. Osagie that he needed to go forward with his case, or his complaint would be dismissed. The plaintiff refused to proceed with his case, and the court dismissed his claim

for unpaid wages with prejudice, and dismissed his claim for discrimination without prejudice. Mr. Osagie then filed a timely Notice of Appeal to this court.

### III. THE DISMISSAL OF THE WAGE CLAIM

Mr. Osagie filed an Affidavit of Indigence in connection with his Notice of Appeal, and the Circuit Court ordered that he be allowed to proceed with his appeal in forma pauperis. Mr. Osagie appeared at oral argument pro se. We observed that his speech is heavily accented, and that it is somewhat difficult to understand him. We would not normally comment on such a circumstance, but we do so in this case because it appears to us that many of the problems that Mr. Osagie suffered during his ill-fated day at the Holiday Inn can probably be attributed to miscommunication.

In any case, Mr. Osagie's handwritten brief on appeal is also somewhat difficult to understand. It appears, however, that he is complaining that he was not paid for the time he worked at the Holiday Inn, that he was discriminated against, and that he was defamed by the defendant. We will deal with these claims in order.

The trial court did not dismiss Mr. Osagie's claim for wages on a finding that the money was not owed, but rather because of Mr. Osagie's refusal to proceed in this case after the court denied his Motion for Continuance. We note that the decision of a trial court to grant or deny a continuance is within the court's discretion, and will not be reversed absent a clear showing of abuse of that discretion. *Mallard v. Tompkins*, 44 S.W.3d 73 (Tenn. Ct. App. 2000); *Russell v. Crutchfield*, 988 S.W.2d 168 (Tenn. Ct. App.1998); *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413 (Tenn. 1997).

Although the trial court did not specifically cite the rule, we deem its dismissal of Mr. Osagie's wage claim to be a dismissal for failure to prosecute under rule 41.02 of the Rules of Civil Procedure. This rule is necessary to enable the court to manage its own docket, and to protect defendants against plaintiffs who are unwilling to put their claims to the test, but determined to subject them to the continuing threat of an eventual judgment. Like the decision to grant or deny a continuance, a trial court's decision to dismiss a case for failure to prosecute is within its sound discretion, and will not be reversed unless there is abuse of that discretion. *Manufacturers Consolidation Service, Inc. v. Rodell*, 42 S.W.3d 846 (Tenn. Ct. App. 2000); *White v. College Motors, Inc.,* 370 S.W.2d 476 (Tenn. 1963).

In the present case, Mr. Osagie does not deny that he agreed to the trial date, and there is nothing in the record to indicate the reason or reasons why he did not feel ready to proceed on the appointed date. While trial courts do have the discretion to grant continuances under the appropriate circumstances, the burden falls on the party asking for the continuance to explain to the trial court just what those circumstances are. In the absence of any such explanation, we do not believe the trial court abused its discretion in declining to grant Mr. Osagie a continuance. We also do not believe it was an abuse of discretion for the trial court to dismiss his claim after he refused to proceed. In fact, we are not sure what else the trial court could have, or should have, done.

## IV. OTHER ISSUES

Mr. Osagie asserts (or at least implies) that the defendant's failure to pay him his wages can support a claim for discrimination. He does not offer any explanation why he believes this, and he does not offer any direct evidence of discrimination.

The appellee notes that a plaintiff may create an inference of discrimination on the basis of race through circumstantial evidence, under either the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq., or Title VII, 42 U.S.C. § 2000 et seq., but that he can only do so if he presents proof of four elements: (1) that he is a member of a racial minority; (2) that he was satisfactorily performing his job duties; (3) that he was subject to an adverse employment action; and (4) that he was either replaced by a non-minority or that similarly situated non-minority employees were treated more favorably. *Anderson v. Mead Johnson Nutritional Group,* 910 F. Supp. 376 (E.D. Tenn. 1996).

Appellee concedes that Mr. Osagie can establish the first and third elements of a discrimination claim, but notes that the record reflects that he was not performing his job duties in a satisfactory manner, and that there is no evidence in the record that he was replaced by a non-minority person or that he was treated any differently from any similarly situated non-minority person. We agree with the appellee that Mr. Osagie has failed to state a prima facie claim of discrimination.

As for the question of defamation, Mr. Osagie does not explain why he believes himself entitled to damages for defamation of character. We note that he did not raise a defamation claim in the court below. This court is only required to consider issues that were presented to the trial court, and we are not required to grant relief "to a party responsible for an error, or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Rule 36, Tenn. R. App. P.

The appellee has suggested that Mr. Osagie perhaps meant to assert a malicious prosecution claim (arising out of his arrest and conviction) rather than a defamation claim (arising from accusations of theft), and out of an abundance of caution has analyzed whether the facts of this case could support a malicious prosecution claim.

Putting aside the objection that such a claim was not raised below, the appellee correctly argues that the elements of a malicious prosecution claim are not present in this case. Without reciting the appellee's arguments in too much detail, we note that one of the elements necessary to establish a malicious prosecution is that the prior action was finally determined in the plaintiff's favor. *Kelly v. Tomlinson*, 46 S.W.3d 742 (Tenn. Ct. App. 2000). In this case, Mr. Osagie admits that he struck Mr. Creech and injured him (although he claimed that Mr. Creech struck him first). Mr. Osagie pled guilty to assault, and was convicted of the crime. Thus, the prior action was finally determined against him, and he is not entitled to maintain an action for malicious prosecution.

## V.

The judgment of the trial court is affirmed.  Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant, Dennis Osa Osagie.


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.