IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 7, 2017 Session

**RUFUS S. JOHNSON III v. ELAINA IRENE JOHNSON**

**Appeal from the Circuit Court for Montgomery County**
**No. MC-CC-CV-DN-14-407        Ross H. Hicks, Judge**

_____

**No. M2016-02418-COA-R3-CV**

_____

In this divorce case, the trial court denied wife's request for a continuance of the trial and then, during the trial, excluded an exhibit proffered by wife. Wife contends that the trial court erred in both respects. Because we conclude the trial court did not abuse its discretion in either decision, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Elaina Irene Johnson.

Roger A. Maness, Clarksville, Tennessee, for the appellee, Rufus S. Johnson III.

**OPINION**

**I.**

The union of Rufus S. Johnson III ("Husband") and Elaina Irene "Vanders" Johnson ("Wife") was troubled almost from the beginning. Shortly after their July 7, 2007 marriage, they entered into a "Post-Nuptial Reconciliation Agreement," which recited that the couple had "experienced unhappy difficulties which resulted in the Husband filing for divorce on September 21, 2007." Through the agreement, Husband and Wife sought to "insur[e] harmony in their relationship, and the freedom of action of one from the another [sic] in the management of their separate business affairs."

Whatever harmony the agreement achieved, it did not last. In February 2014, one day apart, Husband and Wife filed separate complaints for absolute divorce. Wife filed first in the Chancery Court for Montgomery County, Tennessee; Husband filed in the Circuit Court for Montgomery County. The two cases were consolidated in the circuit court.

By agreement of the parties, the court set the case for trial on March 31, April 6 and 9, 2015. But two months after agreeing on trial dates, Wife's counsel moved to withdraw. Wife's new attorney, her third in the case, entered his appearance in December 2014 and, the next month, moved to continue the trial.

Apparently the trial was continued and reset for June 1-3, 2016.[1] Later, at the request of the court, the parties agreed to reset the trial to begin on June 27, 2016.

Meanwhile, petitions filed in the United States Bankruptcy Court for the Middle District of Tennessee, impacted the divorce proceedings. First, Wife sought bankruptcy protection for two general partnerships in which Wife and Husband had indirect interests.[2] As the names of the partnerships imply, Avondale Park Apartments and Hidden Valley Apartments owned apartment complexes, which were located in Clarksville and Pulaski, respectively. Second, on June 9, 2015, Wife filed her own voluntary petition for bankruptcy relief. *See* 11 U.S.C. § 301 (Supp. 2017). Because division of marital property was an issue in her divorce, Wife's bankruptcy filing stayed the divorce proceedings. *Id*. § 362(a)(1), (b)(2)(iv).

At some point, Husband obtained relief from the automatic stay in Wife's bankruptcy case, and later, the bankruptcy court dismissed Wife's bankruptcy case. So the divorce case appeared ready for a trial. But less than two weeks prior to the scheduled trial date, Wife again moved for a continuance.

Wife's motion offered several reasons for a continuance. But the primary reasons appeared to be diminishment of the marital estate and the still-pending bankruptcy cases

---

[1] The record does not include an order continuing the original trial date.

[2] The partners of Avondale Park Apartments were two limited liability companies: Elaina V. Johnson Avondale Park Apartments, LLC and Rufus S. Johnson III Avondale Park Apartments LLC. The partnership agreement for Avondale Park Apartments indicated that Wife was the sole member of Elaina V. Johnson Avondale Park Apartments, LLC and that Husband was the sole member of Rufus S. Johnson III Avondale Park Apartments LLC.

The partners of Hidden Valley Apartments were also two limited liability companies: Elaina V. Johnson Hidden Valley Apts LLC and Rufus S. Johnson III Hidden Valley Apts LLC. The partnership agreement for Hidden Valley Apartments indicated that Wife was the sole member of Elaina V. Johnson Hidden Valley Apts LLC and that Husband was the sole member of Rufus S. Johnson III Hidden Valley Apts LLC.

of Avondale Park Apartments and Hidden Valley Apartments. The motion explained as follows:

> Counsel has been monitoring, and now represents a party,[3] in ongoing bankruptcy matters which involve [Wife]. Counsel has been following a civil action against [Husband]. A very significant Judgment has been entered regarding unpaid debts. It is respectfully submitted that the situation in this civil action has changed so dramatically that mediation associated with this case, at this point, might lead toward the resolution of some issues. The assets of the parties are being dissipated quickly.

> A number of properties which were once administered as rental properties in [sic] constituted equity properties, which were of interest to both parties, have been foreclosed upon and are no longer assets which are subject to division. It is believed limited equity may exist in a [sic] two (2) properties, [sic] however, those properties have now been through the bankruptcy process. Counsel is stunned at the amount of Attorney's fees being asserted by Lender's Counsel which will "attach" to the assets. Specific appraisals have not been undertaken, although it is understood some have been undertaken in the bankruptcy matter, [sic] however, it is believed that equity which once was a significant issue, has now disappeared. There is believed to be some equity, [sic] however, the amount is greatly decreased.

> These parties have been separated for several years. Both parties have been married previously. There are no children born to these parties. As [sic] result a divorce being entered now would be appropriate so that the parties can go on with their lives, and address the very significant property matters and debt matters which are presented.

> Counsel requires a continuance to gather information to understand what assets remain for these parties to fight about.

In addition to requesting a continuance, Wife also sought the entry of a divorce, a stay of "any action with regards to property pending resolution of extensive bankruptcy matters which are pending," and court ordered mediation.

Husband opposed the requested continuance. He conceded that property foreclosures and surrenders had made the division of marital property "much simpler." But he explained that, because the parties had waived spousal support under the Post-

---

[3] Wife's counsel did not explain this statement in the motion, but counsel later revealed that he represented Luther Anderson, Wife's fiancé, in efforts to purchase property from the bankruptcy estate.

Nuptial Reconciliation Agreement, the only real issues for trial were how to divide the parties' interests in the Avondale Park Apartments and the Hidden Valley Apartments and whether those and other apartment complexes must be sold. Husband also expressed concern that, if a continuance were granted, Wife would remain in sole control of the Avondale Park Apartments and the Hidden Valley Apartments. He complained that Wife did not properly manage or account for the properties' rental income.

Wife noticed her motion for continuance to be heard on July 1, four days after the trial was scheduled to start. But the motion was the first topic of conversation on day one of the trial, June 27. In arguing for a continuance, counsel for Wife again pointed to the pending bankruptcy cases as a reason for delay, but then he offered a new reason, the death of Wife's mother. According to Wife's counsel,

> I've not really sat down and talked with her much about preparing because her mother took a very bad turn and then died on June the 15th. I had her in the following week, I guess it was, and I'm just going to be honest, she wasn't emotionally ready to talk with me about what was going on in this case.

Still Wife's counsel spent a majority of his argument on the impact of the bankruptcy filings on the marital estate.

The court denied the requested continuance. And the case proceeded to trial. During Husband's proof, the court admitted into evidence a partnership agreement for Avondale Park Apartments dated March 7, 2013. During Wife's proof, counsel for Wife asked Husband questions about a partnership agreement for "Avondale Park General Partnership," which was dated June 30, 2011. Beyond the names of the partnerships, the agreements varied in several respects. Pertinent to this appeal, the Avondale Park General Partnership agreement provided that Elaina V. Johnson Avondale, LLC would be reimbursed $300,000 prior to any distributions being made to the partners. Wife owned Elaina V. Johnson Avondale, LLC.

Although Husband denied signing it, Wife moved for the admission of the Avondale Park General Partnership agreement. Husband objected on the basis that the agreement had not been produced in discovery. The court sustained the objection, so the agreement was marked for identification only.

In its final decree granting the parties a divorce, among other things, the court awarded Husband and Wife each a fifty-percent interest in the Avondale Park Apartments. The court ordered the apartments to be sold and that any surplus, after the payment of indebtedness and taxes, be divided equally between Husband and Wife.

4

## II.

Wife appeals, raising two issues. First, she states that the failure to continue the trial date was error. Second, she states that the failure to admit the partnership agreement for Avondale Park General Partnership was error.

The decision on continuances "lies in the sound discretion of the court." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). Likewise, "admissibility of evidence is within the sound discretion of the trial judge." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Our supreme court has explained what trial courts must consider in making discretionary decisions and what constitutes an abuse of discretion:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc.*, 312 S.W.3d at 524. In reviewing discretionary decisions, we consider: "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

### A.

The party seeking a continuance bears the burden of establishing the circumstances that justify the continuance. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). Decisions regarding the grant or denial of a continuance are fact-specific and "should be viewed in the context of all the circumstances existing" at the time of the request. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App.

5

2003). The circumstances include: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id*. (footnotes omitted). "Where adequate time for trial preparation and notice of trial date are furnished, the proper procedure is to file an affidavit showing lack of preparation and a 'strong excuse' for changing the trial date." *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (footnote omitted).

Wife submits that the trial court abused its discretion by "fail[ing] to take into account[] the dramatic effect the death of the [sic] parent has on an individual." Wife further submits that her "inability to meet with counsel for literally a month and one half [sic] before the trial date[] constitutes remarkable prejudice."

We find no abuse of discretion in the denial of Wife's request for a continuance. The divorce case had been pending for over two years at the time Wife made her second request for continuance. The reason for the continuance was certainly valid, but Wife did not pursue her request diligently. If she had been unable to meet with her counsel for over a month prior to the trial date due to her mother's illness, Wife should not have waited until the first day of trial to bring this fact to the court's attention. And Wife offered no explanation for why this "remarkable prejudice" was not referenced in her written motion for continuance filed twelve days prior to the trial.

In addition, the record in this case supports the conclusion that Wife suffered no prejudice from the denial of the requested continuance. The parties both acknowledged that, given the bankruptcy filings and the property foreclosures, there were few issues remaining for trial. And prior to that, the parties by agreement limited the issues for trial in the event of a divorce. Under the provisions of the Post-Nuptial Reconciliation Agreement, the parties waived claims against certain identified properties and agreed not to seek alimony or support from each other. They also waived "the right to assert the other parties' [sic] marital fault as a basis upon which the recovery of money may be made in the event of a future divorce."

B.

Determining an appropriate sanction for abuse of the discovery process falls within the "wide discretion" of the trial court. *Meyer Laminates (SE), Inc. v. Primavera Distrib., Inc.*, 293 S.W.3d 162, 168 (Tenn. Ct. App. 2008). The sanction may include exclusion of evidence at trial. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004). Such a sanction may be imposed after consideration of the following factors: "1) the party's reasons for not providing the challenged evidence during discovery; 2) the importance of the evidence; 3) the time needed for the other side to prepare to meet the evidence; and 4) the propriety of granting a continuance." *Id*.

We also find no abuse of discretion in the trial court's exclusion of the partnership agreement for Avondale Park General Partnership. According to the trial transcript, Wife's counsel had been in possession of the agreement for only "[a] couple of days." But no explanation was offered as to how the agreement came to be in counsel's possession. Given that a limited liability company owned by Wife was the "managing general partner" of the partnership, certainly the agreement should have been in Wife's possession.

Notably, Wife does not dispute her failure to produce the partnership agreement in discovery. Instead, she argues that the court should have admitted the agreement because Husband identified his signature on the document and because the agreement must have been in Husband's possession because it was drafted by his counsel. We find Wife's arguments unavailing.

The argument that exclusion of the evidence was error because Husband identified his signature on the partnership agreement misses the point of Husband's objection. Husband objected on the basis that the agreement had not been produced in discovery. Husband did not object on the basis of lack of authentication. *See* Tenn. R. Evid. 901(a). But lack of authentication would have been an independent basis for excluding the partnership agreement. Husband only testified that the signature on the partnership agreement "look[ed] like my signature." Husband denied signing the agreement, and Wife offered no testimony to the contrary.

As for the claim that counsel for Husband prepared the partnership agreement for Avondale Park General Partnership, only circumstantial evidence was offered for that proposition. Wife offered a legal statement from counsel showing that the services rendered included preparation of a partnership agreement. But the statement did not specify which partnership agreement. Wife also testified that she would occasionally draft partnership agreements using an agreement prepared by counsel as a model, suggesting that Wife might have been the source for the partnership agreement for Avondale Park General Partnership. And even if we were to accept as true the claim that counsel for Husband prepared the agreement, that fact would not excuse Wife's failure to produce the executed partnership agreement in discovery.

## III.

We find no abuse of discretion in the denial of Wife's request for a continuance or in the exclusion of the partnership agreement offered by Wife. Thus, we affirm the decision of the trial court.

_____
W. NEAL MCBRAYER, JUDGE

7