IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 14, 2025 Session

## RENEGADE MOUNTAIN COMMUNITY CLUB, INC. v. CUMBERLAND POINT CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC.

**Appeal from the Chancery Court for Cumberland County**
**No. 2022-CH-2244      Ronald Thurman, Chancellor**

_____

**No. E2024-00213-COA-R3-CV**

_____

This appeal arises out of a breach of contract action brought by the appellee against the appellant based upon the appellant's purported breach of a duty to collect and remit to the appellee annual dues owed to it by the appellant's members. Following a bench trial, the trial court entered judgment in favor of the appellee. Appellant timely appealed to this Court. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Matthew J. McClanahan, Crossville, Tennessee, for the appellant, Cumberland Point Condominium Property Owners Association, Inc.

R. Jack Atkins, Mary Esther, Florida, for the appellee, Renegade Mountain Community Club, Inc.

## OPINION

### BACKGROUND

Renegade Mountain is a planned residential community in Cumberland County, Tennessee consisting of 1,362 properties, including single-family homes and condominium units. The community has previously been known by several other names. Appellee Renegade Mountain Community Club, Inc. ("RMCC") is the non-profit homeowners' association for Renegade Mountain. Cumberland Point Condominiums ("CP Condos") is

a condominium project within Renegade Mountain. Appellant Cumberland Point Condominium Property Owners Association, Inc. (the "POA") is the non-profit condominium owners' association for CP Condos.

The properties within Renegade Mountain, including CP Condos, are encumbered by a Declaration of Covenants and Restrictions dated July 26, 1972 (the "1972 Declaration") "in order to provide for the preservation of property values in [the] community and for the maintenance of the streets, water and sewer systems, lakes, golf courses, playgrounds, parks, and other recreational and common facilities[.]" To that end, the 1972 Declaration allows RMCC to annually assess dues upon the Renegade Mountain property owners

> for the purpose of promoting the recreation, health, safety, and welfare of the residents . . . and in particular for the improvement and maintenance of properties, services and facilities devoted to this purpose and related to the use enjoyment of the Common Properties and the improvements [within Renegade Mountain], including but not limited to the payment of taxes and insurance thereon, and construction of capital improvements, repair, replacement, and additions thereto, and for the cost of labor, equipment, materials, management and supervision thereof.

The annual assessments may also be used for the maintenance of roads and streets within Renegade Mountain. However, the 1972 Declaration expressly exempts the following properties from such assessments:

> Common Properties,
> Limited Common Properties,
> Utility Easements and all other Easements,
> Reserved Properties,
> Utilities,
> Water and Sewer System and Properties.

Notably, the 1972 Declaration does not define "Water and Sewer System and Properties."

In addition to the 1972 Declaration, CP Condos are also encumbered by a Supplemental Declaration of Covenants and Restrictions and Master Deed for Cumberland Point Condominiums dated March 26, 1987 (the "1987 Declaration"). Pursuant to the 1987 Declaration, the CP Condos unit owners are members of both RMCC and the POA and must pay dues to both entities. Moreover, the 1987 Declaration provides:

> The [POA] shall collect, in addition to its monthly assessment, the periodic dues for [RMCC] which are all a part of the common expense. The lien of

the [POA] and the lien of [RMCC] to secure the payment of the annual dues shall be concurrent and on equal parity.

The 1987 Declaration also provides that the common expenses of CP Condos "shall be shared by the Unit Owners in accordance with their respective ownership interest in the common areas and common surplus[.]"

Until 2018, the POA typically collected and remitted to RMCC the dues owed it by the CP Condos unit owners. However, in or about 2018, the POA stopped collecting those dues owed to RMCC. On July 8, 2021, RMCC's Board of Directors mailed a letter to the POA seeking to collect the dues owed to RMCC by the CP Condos unit owners for calendar years 2016 through 2021.[1] After numerous follow-up letters from RMCC, counsel for the POA responded on February 9, 2022. Counsel's letter states, in relevant part:

. . . [A]s of October 2020, the [POA] is entitled to exemption from RMCC "assessments, charges and liens created herein" by virtue of an exemption contained in the original 1972 [Declaration] due to the relocation of a sewer system onto [POA] property. The 1972 [Declaration] remain[s] in effect, and the exemption contained therein was in effect when the [POA] sewer system, which cost just under $400,000.00 to design, develop and install, became operational in October 2020.

* * *

The [POA] rejects the dues invoices provided by RMCC. Said invoice includes purported back dues from 2016, 2017 and 2018. In 2016, under Chancery Court supervision, the [POA] rendered dues payment to [] RMCC in the amount of over $33,000.00 which the court agreed brought [the POA] current and in good standing for 2016. Subsequently, under court order an election was hel[d] and a new RMCC Board of Directors was elected and began operation in 2017, and continued through the majority of 2018 until this board was set aside by an Appellate Court ruling, which, as mentioned previously, left [] RMCC without Directors and Officers and the ability to operate until April 2021. During both 2017 and 2018, [the POA] rendered to [] RMCC dues for all condos that were in good standing with [the POA]. Lists of units and owners were provided to the RMCC Board, and [the POA] accounting was accepted by the RMCC Board which fulfilled [] all [POA] dues obligations for those years. [The POA] did not render RMCC dues to [] RMCC for 2019 and 2020 for the reasons cited above, and are exempt from

---

[1] The letter further states: "Although any RMCC dues owed prior to 2016 will not be removed from the corporate books, the governing documents (construed as a contract) are only enforceable for a period of six (6) years, in this case 2016 to 2021."

any RMCC assessments after October 2020. Subsequent to the trial court reinstating the 2016 "owner board" in April 2021, [] RMCC elected to bill [the POA] an exorbitant amount for 2016, 2017 and 2018 for abandoned condos where the [POA] had not collected dues. Thirteen of these condos were purchased by [the POA] via Cumberland County tax sales and recorded in 2018 which rendered all prior dues claims void for those units. The [POA] considers its dues obligation for 2016, 2017 and 2018 fully satisfied and will recognize no "look back" tactic by the current RMCC board. [The POA] met its obligation under the Chancery Court ruling and the duly elected RMCC Board for those respective years.

* * *

. . . From 2004 until 2018, [the POA] has paid dues to [] RMCC in excess of $250,000.00. . . .

Finally, your assumption about [the POA] dues collection is incorrect. As reported at the recent [POA] annual owners meeting, the [POA] is no longer collecting dues assessments for RMCC dues, since [the POA] is entitled to exemption from RMCC assessments. The [POA] would have increased dues (which have remained static for many years) for 2022, however, given the exemption from RMCC dues [the POA] is entitled to in the future, those funds were reclassified as a [POA] dues increase, and [the POA] was able to avoid a net increase to its dues in 2022. . . .

On May 26, 2022, RMCC filed a complaint in the Cumberland County Chancery Court (the "trial court") setting forth a claim of breach of contract against the POA due to its purported failure to collect the annual dues owed to RMCC for 2016 through 2021 and for its anticipatory breach in 2022 and beyond.

On November 21, 2022, the POA filed a Motion to Dismiss premised upon RMCC's alleged lack of standing to bring the action. Specifically, the POA averred that "[t]he Renegade Mountain Community Club, Inc. that was in existence at the time of the development of Renegade Mountain [(the "Dissolved Entity")] and would have had privity of contract with the landowners thereon, [was] dissolved effective May 13, 2022." RMCC did not attach to its Complaint any proof that it was the successor of the Dissolved Entity or had been assigned its contractual rights; thus, the POA argued, RMCC "lacks capacity and standing to enforce any alleged breach of contract as alleged in its Complaint."

On March 29, 2023, the trial court entered an agreed order granting RMCC leave to amend its complaint to add additional averments regarding the relationship between the Dissolved Entity and RMCC. The agreed order also granted RMCC leave to attach as an

exhibit to the complaint a document executed by the Dissolved Entity and RMCC that purports to

> give, transfer, convey and quitclaim unto [RMCC] all [of the Dissolved Entity's] assets, whether real, personal, tangible or intangible property, . . . and without limitation: all rights, claims, privileges, interests, or defenses, whether known or unknown, in any potential or current litigation at trial or appeal; all rights, claims, privileges, interests, or defenses, whether known or unknown, by and through any lease, contract, agreement, covenant, easement, or lien; and all records, documents, correspondence (including email) of any nature and form.

Thereafter, on June 15, 2023, the trial court entered an order providing that the POA's "Motion to Dismiss is hereby dismissed without condition[.]"

A bench trial in this matter was scheduled for December 6 and 7, 2023. On November 15, 2023, a wildfire destroyed ten units and damaged other buildings within CP Condos. Two days later, on November 17, the POA filed a motion to continue the trial, stating in relevant part:

> 1. [The POA] seeks a continuance on the grounds the [POA] needs more time to prepare for trial in light of the recent wildfire that swept across Renegade Mountain.
>
> * * *
>
> 7. In order to adequately prepare for trial, counsel must prepare witnesses, exhibit lists, review discovery, and have the cooperation of his clients.
>
> 8. The residents of [CP Condos] are rightfully occupied with assisting their neighbors and tending to the aftermath of the wildfire and do not have adequate time to prepare for trial.
>
> * * *
>
> 10. [The POA has] not yet reviewed the discovery that was propounded to [RMCC] in this case.
>
> 11. The prejudice to the [POA] is great as if this [trial court] fails to grant this continuance as a result of the natural disaster that has befallen its residents, they will be asked to have a trial just a few weeks after experiencing a traumatic wildfire.

RMCC opposed the requested continuance, and the trial court announced at a hearing on December 1, 2023 that he was denying the motion for continuance. An order memorializing that denial was entered on December 7, 2023. The matter proceeded to a bench trial as scheduled.

At trial, Gloria Hutcherson testified that she owned a unit within CP Condos from 1988 until her unit burned in the November 2023 wildfire. Ms. Hutcherson testified that she had always paid her monthly dues to the POA as a lump sum and that the POA then paid over to RMCC that portion of the dues that was owed to it. However, in approximately 2019, she learned that the POA was no longer transmitting any dues to RMCC, despite the fact that she was still making payments to the POA for those RMCC dues. She testified that she asked the POA's Vice President, Gary Otto, about this and that he informed her that the funds were being escrowed by the POA. She further testified that she had never authorized the POA to retain that portion of her payments that were intended as payment of her RMCC dues and that the POA's Board of Directors had never asked the CP Condos unit owners whether they wanted the POA to stop remitting such dues to RMCC.

Through the POA's President, David Carter, RMCC introduced into evidence an email from Mr. Carter to the POA's accountant, Terry Stephens, sent on June 29, 2021. This email instructed Mr. Stephens:

> Per our meeting this morning, please make the following changes, based on [POA] Board decisions during a board meeting held this past Saturday. We have been focused on other [POA] Board matters as well as waiting for legal advice, and it is past time to make the following adjustments:
>
> 1. The Board decided that our profit and loss statements have been incorrect and need update. Effective as of August, 2020 [POA] property is exempt from RMCC dues, liens and charges by installing the sewer system completely on [POA] owned property. This exemption is provided in the [1972 Declaration] and remains in effect. Therefore, please reverse all 2021 ledger entries related to RMCC contingent liability (currently reflected as $8,010.00). All of this $8010.00 shown as 2021 income items should be rolled into "Maintenance Assessments" on the profit and loss, revenue income line.
>
> 2. [The POA] Dues structure should have been altered previously, however we overlooked this matter. The 2021 dues structure is: [POA] Maintenance Dues - #155.12, COUD Water - $54.88, The total, $210.00, remains unchanged.

3. On the Balance Sheet, change the Liability Account Title from "RMCC Dues Payable contingency" to "Contingency Payable". This category will account for potential legal or other costs the [POA] might encounter in the future.

RMCC also introduced through Mr. Carter an email he sent a CP Condos unit owner, Edith Reinhart, on June 7, 2021. This email to Ms. Reinhart stated:

I think you know that there is a mountain wide [property owners' association], Renegade Mountain Community Club (RMCC), that we pay dues to, that come out of your [POA] dues. [RMCC] is responsible to keep up the common areas of the mountain. There has been an ongoing lawsuit for about 10 years between two groups (not us) on who the board of directors is of [RMCC]. In 2018 the courts vacated the board of directors of [RMCC], and no services have been provided to maintain the roads or [*sic*] since then. It appears that the lawsuit is ending and the winn[in]g side plans to demand we owners pay back dues for 2019 till now, even tho[ugh] no services were provided and [RMCC] was dissolved by the State. About 30 [CP Condos unit] owners have asked your [POA] Board to fight paying back dues to RMCC for those years. We can use those funds for our needs. I [w]ould like to know if you will support us fighting payment of those back dues, on your behalf. It doesn't affect your [POA] Dues.

Mr. Carter testified that he "probably" sent similar emails to other CP Condos unit owners but that he did not recall. He further testified that he called and personally visited some of the CP Condos unit owners "as a convenient way to survey the population" about whether they supported the POA Board's refusal to collect and remit the RMCC dues but that he "didn't intend to do a 100 percent survey." He stated that "before [the POA Board] had a strong viewpoint from owners, it was objective -- more objective." However, as they "gained the additional numbers that said" the POA should stop collecting and remitting dues to RMCC, he "probably fell more to that side and lost a little bit of the objectivity, in fairness." Additional emails introduced by RMCC reveal that in October 2021, Ms. Reinhart responded to Mr. Carter's June 2021 email and informed him that RMCC had sent letters to the CP Condos unit owners asking them to pay dues directly to RMCC. However, Ms. Reinhart informed Mr. Carter, she was "not for paying them a cent." Mr. Carter replied to Ms. Reinhart, writing:

Yes. Typical tactics they employ . . . fear and braggadocio. In ten years [the POA] paid them over $140,000.00, $250,000.00 over 18 years and our roads and infrastructure have continued to deteriorate. Continuing to allow them to mismanage and act as tyrants will only allow things to get worse. If you aren't attending our upcoming annual meeting on 6 Nov I'd be honored to have your proxy. We need like minded [POA] owners support.

On January 11, 2024, the trial court entered judgment in favor of RMCC, finding in relevant part:

2. The testimony of [RMCC]'s President John Moore is credible. The testimony of David Carter, President of [the POA], is not credible.

* * *

5. [The 1987 Declaration] imposes a contractual obligation upon [the POA] to assess dues upon Unit Owners, including dues owed to [RMCC]. [The POA] is obligated to collect the dues owed [RMCC] and remit the same to [RMCC].

6. [The POA] is obligated to pay [RMCC] dues for each condominium in [CP Condos].

* * *

8. [The POA] filed a motion to dismiss this cause of action early in this litigation on the grounds [RMCC] lacked standing and authority under the 1972 Declaration to collect dues from the Unit Owners. However, said motion to dismiss was dismissed without condition, which the [trial court] construes to be with prejudice. The [trial court] finds [RMCC] has standing to bring this cause of action.

9. Since [the lawsuit over control of RMCC's Board was resolved], [the POA] has schemed to divert dues owed to [RMCC] by Unit Owners to its own use and benefit.

10. Based upon Article X, Section 12 of the 1972 Declaration, [the POA] asserted on behalf of the Unit Owners that a sewer system on the [CP Condos] property that became operational in 2020 exempted the Unit Owner[s] from paying [RMCC] dues. The [trial court] finds that defense to be not legitimate.

11. Through donated labor, material and funds, [RMCC] performed maintenance on the roads and kept street lights on. Therefore, the [trial court] finds [the POA]'s claim that the Unit Owners were entitled to forego payment of dues to Plaintiff due to lack of services is without merit.

12. . . . The net amount of $111,158.22 of dues is owed to [RMCC] by [the POA].

13.     The amount awarded to [RMCC] is a finite sum. [RMCC] is entitled to prejudgment interest at the rate of ten percent (10%) to December 7, 2023 in the amount of $24,128.32.

14.     . . . The [trial court] orders [the POA] to pay [RMCC]'s reasonable attorney fees incurred in this cause of action.

* * *

16.     In light of the circumstances of this case, the [trial court] finds the reasonable attorney['s] fees incurred by [RMCC] in this cause of action to be $30,255.00.

WHEREFORE, it is **ORDERED**, **ADJUDGED** and **DECREED** that [RMCC] have **JUDGMENT** against [the POA], including unpaid dues, prejudgment interest, and reasonable attorney fees, in the total sum of $165,541.54.

(Internal record citations omitted).

This timely appeal followed.

## ISSUES

The POA raises four issues on appeal:

1.     Whether the trial court erred in imposing upon [the POA] a duty to remit dues for each condominium in [CP Condos] when there is no clear contractual duty to do so in the restrictive covenants?

2.     Whether the trial court committed reversible error in not granting a continuance when [CP Condos] experienced a fire that destroyed ten or more condominiums less than three weeks before trial?

3.     Whether the [1972 Declaration] grants [CP Condos] an exemption from dues because of the placement of a sewer system on its property?

4.     Whether [RMCC] has standing to bring suit against [the POA]?

In its role as appellee, RMCC raises one additional issue: "Whether [RMCC] is entitled to an award of its reasonable attorney['s] fees on appeal?"

## STANDARD OF REVIEW

We review the trial court's conclusions of law de novo with no presumption of correctness. *Hargis v. Fuller*, No. M2003-02691-COA-R3-CV, 2005 WL 292346, at *3 (Tenn. Ct. App. Feb. 7, 2005) (citing *Briggs v. Est. of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997)). Because this case was tried by the trial court sitting without a jury, we review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

## ANALYSIS

*a.*

We first address the threshold issue of standing. The POA argues that RMCC does not have standing to bring its claim because it obtained its rights under the declarations from its predecessor entity, Renegade Mountain Community Club (Tennessee Secretary of State Control No. 82588)[2] (the "Dissolved Entity"), after its dissolution. The trial court found that RMCC has standing to bring its claim but did not explain the reason for its ruling.

On May 13, 2022, the Dissolved Entity filed a notice of dissolution with the Tennessee Secretary of State. On May 20, 2022, the Dissolved Entity executed an Asset Transfer to RMCC. Among the transferred assets were "all [of the Dissolved Entity's] assets, whether . . . personal, tangible or intangible property, . . . and without limitation: all rights, claims, privileges, [or] interests, . . . whether known or unknown, in any potential or current litigation at trial or appeal; [and] all rights, claims, privileges, [or] interests, . . . whether known or unknown, by and through any . . . contract, agreement, covenant, . . . or lien[.]" The POA argues that RMCC does not have standing to enforce the Dissolved Entity's rights under the declarations because "the right of [the Dissolved Entity to] sue for a breach of contract died with its dissolution."

---

[2] RMCC was originally incorporated, effective as of January 1, 2022, in the state of Tennessee as Renegade Mountain CC, Inc. (TN SOS Control No. 1265914). On May 13, 2022, Articles of Amendment were filed with the Tennessee Secretary of State changing its name to Renegade Mountain Community Club. Each entity was incorporated within the state of Tennessee as a nonprofit corporation.

The Tennessee Nonprofit Corporation Act expressly states:

(a) A dissolved corporation continues its corporate existence, but may not carry on any activities except those appropriate to wind up and liquidate its affairs, including:

* * *

(2) Conveying and disposing of its properties that will not be distributed in kind;

* * *

(5) Transferring, subject to any contractual or legal requirements, its assets as provided in or authorized by its charter or bylaws;

* * *

(8) Doing every other act necessary to wind up and liquidate its assets and affairs.

(b) Dissolution of a corporation does not:

* * *

(4) Prevent commencement of a proceeding by or against the corporation in its corporate name[.]

Tenn. Code Ann. § 48-64-106.

The POA does not dispute that the Dissolved Entity had standing to bring a breach of contract claim against the POA under the declarations. The POA also does not dispute that the Dissolved Entity's transfer of its rights under the declarations to RMCC would have been effective in the absence of the dissolution. The POA's only argument is that the Dissolved Entity's transfer of its right to sue to enforce the covenants and restrictions was not effective because the entity had been dissolved. However, this is contradicted by the express language of the Tennessee Nonprofit Corporation Act quoted above, which permits a dissolved entity to perform every act necessary to wind up and liquidate its assets and affairs, including transferring its assets and commencing a proceeding by the corporation in its corporate name. Accordingly, the trial court did not err in finding that RMCC has standing to bring this action.

*b.*

We next address the other procedural issue raised by the POA: whether the trial court erred in denying its motion for continuance. Whether to grant or deny a motion for continuance is within the discretion of the trial court. *In re Anna W.*, No. W2022-00657-COA-R3-PT, 2022 WL 17820763, at *3 (Tenn. Ct. App. Dec. 20, 2022) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). "The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Id.* The party seeking the continuance has the burden of "establishing the circumstances that justify the continuance." *In re Rhyder C.*, No. E2021-01051-COA-R3-PT, 2022 WL 2837923, at *5 (Tenn. Ct. App. July 21, 2022) (citing *Osagie v. Peakload Temp Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002)). The relevant factors include "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (quoting *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003)). "In the absence of a transcript or statement of the evidence, a presumption arises that there was sufficient evidence to support the trial court's judgment." *In re Est. of Henderson*, 121 S.W.3d 643, 647 n.5 (Tenn. 2003) (citing *Mfrs. Consol. Serv. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000)).

The POA filed its motion for continuance on November 17, 2023, two days after a wildfire destroyed ten units and damaged other buildings within CP Condos. RMCC opposed the motion. The trial court held a hearing on the motion; however, there is no transcript or statement of the evidence in the record, so we are unable to review the evidence presented at that hearing. Likewise, the trial court's order denying the motion does not contain findings of fact or conclusions of law to assist in our review. The POA argues that this denial "was made in error" and "impaired the due process rights of [the POA]."

Without the benefit of a transcript or statement of the evidence allowing us to know what happened at the hearing on the POA's motion for continuance, we must presume that there was sufficient evidence to support the trial court's denial of the motion. Moreover, we cannot disturb the trial court's ruling on the motion unless the record clearly shows an abuse of discretion by the trial court and prejudice to the party seeking the continuance, the POA. Given these presumptions, and having carefully reviewed the record before us, we conclude that the trial court did not abuse its discretion by denying the POA's motion for continuance.

*c.*

Turning next to the POA's substantive issues, it posits that "the trial court erred in imposing upon [the POA] a duty to remit dues for each condominium in [CP Condos] when

- 12 -

there is no clear contractual duty to do so in the restrictive covenants." In relevant part, the trial court held that the 1987 Declaration

> imposes a contractual obligation upon [the POA] to assess dues upon Unit Owners, including dues owed to [RMCC]. [The POA] is obligated to collect the dues owed [RMCC] and remit the same to [RMCC].
>
> [The POA] is obligated to pay [RMCC] dues for each condominium in [CP Condos].

(Paragraph numbering omitted). The POA argues that there is no privity of contract between RMCC and the POA requiring the POA to pay the RMCC dues. Instead, it argues, RMCC should have sued the CP Condos unit owners to collect the dues and not the POA.

However, this argument ignores the plain language of the 1987 Declaration, which expressly provides that the POA "*shall collect*, in addition to its monthly assessment, the periodic dues for [RMCC] which are all a part of the common expense." (Emphasis added). At trial, Mr. Carter all but conceded that the POA breached this duty:

> Q    And you don't dispute that the [1987 Declaration] requires your organization to collect dues from the unit owners that are owed to [RMCC] and remit those to [RMCC]?
>
> A    Our job is to receive the dues that the owners pay and forward those dues that the owners have paid for that category to [RMCC]. That's how I define that.
>
> * * *
>
> Q    And the practice that Mr. Dugan explained, reprogramming RMCC dues to [POA] dues[3], that practice continues today, does it not?
>
> A    No. We do -- no longer collect dues for [RMCC].
>
> * * *

---

[3] RMCC also introduced into evidence minutes of the POA 2021 Annual Owners Meeting held on November 6, 2021. These minutes reflect that the POA's treasurer, John Dugan, "informed the owners [present at the meeting] that monthly amount formerly programmed for RMCC dues were reprogrammed into [POA] dues, avoiding a $20.00 per month overall dues increase, because once the sewer system was placed on [POA] property proper, the [POA] was entitled to an exemption from RMCC fees, charges and assessments."

Q        Did you, as [the POA], send out an invoice for RMCC dues in 2021?

A        To [CP Condos] owners?

Q        Yes, sir.

A        Of course -- no. Absolutely not.

Q        Okay. And didn't accept any funds in 2021 on that --

A        No. We had changed it. By then, we weren't collecting for -- because of the [sewer property] exemption, we changed. We weren't collecting dues because we didn't feel the owners -- we didn't believe the owners owed those dues to [RMCC], so --

Q        And is it also -- oh, go ahead. I'm sorry.

A        -- we didn't collect any money from them.

Q        Is it also true in 2022?

A        Correct.

Q        And 2023?

A        Correct.

As set forth above, the parties proceeded for years with the POA collecting dues for RMCC and remitting those dues to RMCC. It was not until the POA decided that it was exempt from dues because of the construction of a new sewer system that the POA stopped collecting and remitting RMCC dues. As discussed below, the sewer property exemption does not apply to relieve the POA of its duty to collect the RMCC dues. Accordingly, that duty continued, and we agree with the trial court that the POA was in breach of that duty by refusing to collect the dues owed to RMCC by the CP Condos unit owners.

*d.*

The POA lastly argues that the CP Condos unit owners are exempt from paying RMCC dues because a sewer system that serves these units was constructed on the CP Condos property in 2020. This argument relies upon that portion of the 1972 Declaration which provides:

- 14 -

Section 12. Exempt Property. The following property subject to this Declaration shall be exempted from the assessments, charge and lien created herein:

> Common Properties,
> Limited Common Properties,
> Utility Easements and all other Easements,
> Reserved Properties,
> Utilities,
> Water and Sewer System and Properties.

The 1972 Declaration does not define "Water and Sewer System and Properties."

At trial, Mr. Carter testified that prior to 2020, the sewer system that served CP Condos was on property that did not belong to the POA. He explained that, in or around 2015, the POA sued Moy Toy, the owner of the property on which the original sewer system was located. The ultimate resolution of that lawsuit required the POA to re-locate the sewer system from Moy Toy's property. In 2020, a new sewer system was installed on the CP Condos property. This sewer system serves CP Condos but does not serve the remainder of Renegade Mountain. The POA insists that the installation of the sewer system on the CP Condos property exempts all of the CP Condos unit owners from paying the RMCC annual dues. We do not agree.

The restrictive covenants in this case are formed by the original 1972 Declaration and a series of amendments and supplements thereto, which "may be construed together because they are integral ingredients to the development and construction of" CP Condos. *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 599 (Tenn. Ct. App. 1999). "In construing contracts, we are to give effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous." *Lovett v. Cole*, 584 S.W.3d 840, 861 (Tenn. Ct. App. 2019) (citing *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 468 (6th Cir. 2015)). In addition to exempting "Water and Sewer System and Properties" from the RMCC annual dues assessment, the 1972 Declaration also exempts, *inter alia*, "Common Properties" and "Utility Easements." The 1987 Declaration specifically provides that CP Condos would be constructed with common areas and provides its developer with a utility easement. Taking the POA's argument to its logical conclusion, these features would exempt the CP Condos unit owners from the RMCC annual dues even before CP Condos was built. In other words, the POA's interpretation of the exemption renders superfluous the requirement in the 1987 Declaration that the CP Condos unit owners pay RMCC dues and the corresponding requirement that the POA collect those dues. This cannot be what was intended by the drafters of the 1972 Declaration and the 1987 Declaration. As such, the trial court did not err in holding that the relocation of the

- 15 -

sewer system onto the CP Condos property did not exempt the CP Condos unit owners from the RMCC annual dues assessment.

*e.*

Finally, RMCC requests its attorney's fees on appeal. In support of this request, RMCC relies upon a Restated and Amended Declaration adopted by its membership in 2021 (the "2021 Amended Declaration"), which provides in relevant part:

> If [RMCC], any Owner or any other party entitled to relief pursuant to this [2021 Amended] Declaration brings or defends a cause of action (including but not limited to collection of Assessments and enforcement of liens), at trial or appeal, . . . and [RMCC], or Owner or the said other party prevails, then the non-prevailing party shall reimburse [RMCC's], Owner's or the other said party's reasonable attorney fees, court costs, and discretionary costs, and pre and post judgment interest on demand. The same may be made a part of a judgment.

The POA opposes this request and argues that the 2021 Amended Declaration "clearly provides that the 'non-prevailing party' shall be entitled to a recovery of its reasonable attorney['s] fees and costs." This argument by Appellant directly contradicts the plain language of the 2021 Amended Declaration attorney's fees provision, which does not provide that the non-prevailing party is entitled to recover its fees and costs; this provision instead provides that "the non-prevailing party *shall reimburse*" the prevailing party for its fees and costs. (Emphasis added).

Alternatively, the POA argues that RMCC relies upon the 1987 Declaration to support its breach of contract claim and not the 2021 Amended Declaration. However, the 2021 Amended Declaration specifically incorporates the 1972 Declaration and the 1987 Declaration by reference; therefore, those earlier declarations became a part of the 2021 Declaration. *Brewer v. Brewer*, 869 S.W.2d 928, 932 (Tenn. Ct. App. 1993) (quoting *Incorporation by Reference*, *Black's Law Dictionary*, 766–67 (6th ed. 1990)). Moreover, the trial court awarded RMCC its attorney's fees pursuant to language in the 1972 Declaration, and the POA does not challenge that ruling on appeal.

"[W]hen the parties' valid and enforceable agreement requires an award of reasonable attorneys' fees to a prevailing party, appellate courts must enforce the agreement." *G.T. Issa Constr., LLC v. Blalock*, No. E2020-00853-COA-R3-CV, 2021 WL 5496593, at *11 (Tenn. Ct. App. Nov. 23, 2021) (citing *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017)). Because the 2021 Amended Declaration provides that on appeal "the non-prevailing party shall reimburse [RMCC's], Owner's or the other said party's reasonable attorney fees [and] court costs," and RMCC is the prevailing party on appeal, we conclude that RMCC is entitled to an award of its reasonable appellate attorney's fees.

- 16 -

The specific amount of such fees shall be determined by the trial court on remand.

## CONCLUSION

Based on the foregoing, we affirm the ruling of the Chancery Court for Cumberland County, and this case is remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Cumberland Point Condominium Property Owners Association, Inc., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE